IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:25CR198 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S SENTENCING** |
| v. | ) | **MEMORANDUM** |
| | ) | |
| BRIAN L. GARGES, | ) | |
| | ) | |
| Defendant. | ) | |

## Introduction

The Defendant awaits sentencing following guilty pleas to child pornography production and receipt. He is 63 years old and is serving a 30 to 40 year state court sentence imposed by the Douglas County District Court for related conduct (RPSR ¶67). He will hit state prison parole eligibility when he is 77 years old and eligibility for mandatory release when he is 82 -- assuming he lives to either date.

The plea agreement contemplates that the Defendant's state court sentence constitutes relevant conduct and should be given corresponding treatment under U.S.S.G. §5G1.3 which requires that the Court adjust the federal sentence for the time already served on the state court sentence and impose a federal sentence concurrent to the remainder of the state court sentence.

As explained in this memorandum, the Court should do three things. First, it should adjust its Count 1 and Count 3 sentences for the 13 months already served on the undischarged Douglas County District Court sentence. Second, it should impose sentences on Counts 1 and 3 concurrent to each other and concurrent to the Douglas

–1–

County District Court sentence (as well as a possible later sentence of the Dodge County District Court – see below). Third, in light of the Defendant's age and the mitigative impact of his guilty pleas, it should vary to imposed sentences of 198 months to correspond to the Defendant's state parole eligibility.

### The Current Count 1 and Count 2 Guideline Sentences

The Defendant does not object to the guideline provisions of the RPSR. Such advisory guidelines land at the respective statutory maximums, 360 months on Count 1 and 240 months on Count 3.   RPSR at ¶115.

### Imposition of Federal Sentences under U.S.S.G. §5G1.3(b)

Consistent with the findings of the RPSR, the parties have agreed that the Defendant's state court sentence involved relevant conduct to his federal offenses. RPSR at ¶¶ 14, 67, 116.   Therefore, two things must happen now.   First, §5G1.3(b)(1) requires that the Court adjust its sentence by the 13 months already served because 18 U.S.C. §3585(b) will not permit credit against the federal sentences for that time already credited against such other sentence. Therefore, apart from any variance, the adjusted sentence on Count 1 should be 347 months and the adjusted sentence on Count 3 should be 227 months. U.S.S.G. §5G1.3, comment (n.4(E)).

The second thing that must happen is that under U.S.S.G. §5G1.3(b)(2) the Court must impose concurrent sentences. Therefore, the Court's Count 1 and Count 3 sentences should be concurrent to each other and should be concurrent to the Douglas County District Court sentence.

–2–

There is also the matter of the pending matter in Dodge County that involves other sexual assaults of this same victim that occurred there. RPSR at ¶ 72. Since that matter involves the same victim and the same course of conduct, this Court should also state that its sentences shall be concurrent to any such sentence of the Dodge County District Court. *Setser v. United States*, 566 U.S. 231, 236 (2012)(recognizing a federal district court's sentencing authority relative to an anticipated state sentence).

**Why (and by how much) the Court should vary on Counts 1 and 3**

The Court should vary from the advisory guidelines for the two main reasons of his age and the mitigating impact of his federal guilty pleas. The fact is that the Defendant's state court sentence, assuming earned state good time and life span, leaves him in Nebraska prison to at least one of two dates: August 10, 2040 for parole or August 10, 2045 for mandatory release. In plain terms, the Defendant can parole at 77 or "jam" at 82. RPSR ¶ 67.

Well established data confirm that which common sense and every day experience would suggest – increased age corresponds to increased problems of health and treating those problems costs money, a lot of it. For example, The United State Department of Justice Office of the Inspector General has published its *"Review of the Impact of an Aging Inmate Population on the Federal Bureau of Prisons*," https://oig.justice.gov/sites/default/files/reports/15-05.pdf (May 6, 2015). The OIG found that aging inmates are more costly to incarcerate and also less likely to re-offend when released. Mr. Garges is one example. His health is far from ideal (RPSR at ¶¶ 90-96). His

–3–

age at release and the certainty of close state and federal supervision would make him a low risk of any recidivism or threat to public safety.

The Defendant plead guilty in federal court, and did so promptly after his state court sentencing, thus sparing the minor victim and her family the continued and lingering trauma of continued litigation. The value to the victim and her family of a finite end to these proceedings and admissions of guilt is significant to them and mitigating with respect to the Defendant and should reflect in the federal sentence imposed.

When paroled at age 77 or released from his state sentence at age 82, little practical value will be served by transferring the Defendant to a federal prison facility.   At either age, the most likely risk the Defendant will present is the need for significant medical attention and assistance in the tasks of everyday living. In comparison, his risk of any recidivism is minimal. An elderly and infirm man presents little public danger and one under the close scrutiny of either or both a state parole officer and federal probation officer and the strictures of sex offender registration even less so.   In comparison to low recidivism risks, the risks of a fall, a new surgery, a new medication, the necessity of skilled nursing care, memory care or assisted living will be the far greater probability.

Assuming he still leaves and breathes, the parallel state and federal prison time lines are clear. The Defendant's first state prison parole eligibility will be 168 months from his scheduled federal sentencing. His projected mandatory release date will be 228 months from his scheduled federal sentencing. The Defendant's federal offenses are ineligible for earned time credits under the First Step Act. 18 U.S.C. §§3632(d)(4)(D)(xxxix, xli). Therefore, the most that the Defendant's federal sentence will

–4–

reduce is the fifteen percent earned good time under 18 U.S.C. §3624(b). Factoring in that federal good time credit, the 168 months to state prison parole eligibility equates to a federal sentence of 198 months (198 x .85 = 168.3) and the 228 months to mandatory state prison release equates to a federal sentence of 268 months (268 x .85 = 227.8).

Both the ends of justice and sheer pragmatism favor the eventual release of a 77 year old geriatric patient after fifteen years of imprisonment. At that point, all of the statutory sentencing factors will have been sufficiently vindicated. If he is paroled, that will occur only if state parole authorities have carefully weighed the risks and deem that appropriate. If his federal prison sentence is discharged at that same time frame, Mr. Garges' medical and other needs would no longer burden either the state or federal prison systems and he would transition to the supervision of state and federal authorities for the duration of his life, whatever span of time that might be and presenting little public safety or recidivism risks over that uncertain span. That should be the sentence of this Court.

## Conclusion

Based on the foregoing, Mr. Garges should be sentenced to concurrent sentences of 198 months.

BRIAN L. GARGES, Defendant,

By:_____s/ Jeffrey L. Thomas_____
**JEFFREY L. THOMAS**
**First   Assistant   Federal   Public**
**Defender**
1620 Dodge Street, Suite 600
Omaha, NE   68102

Tel. (402) 221-7896

Email jeff_thomas@fd.org

–5–